CMM CABLE REP, INC., d/b/a Creative Media Management, Inc., Plaintiff–Appellant,

v.

OCEAN COAST PROPERTIES, INC., d/b/a/ WPOR–FM, Robert Gold, individually and officially as General Manager, Graphics North, Inc. and James Spizuoco, Defendants–Appellees.

CMM CABLE REP, INC., d/b/a Creative Media Management, Inc., Plaintiff–Appellee,

v.

OCEAN COAST PROPERTIES, INC., d/b/a/ WPOR–FM, Robert Gold, individually and officially as General Manager, Graphics North, Inc. and James Spizuoco, Defendants–Appellants.

Nos. 95–1985, 95–2059.

United States Court of Appeals, First Circuit.

Heard Feb. 5, 1996.

Decided Sept. 20, 1996.

Anne S. Mason, Clearwater, FL, with whom Mason & Associates, P.A., John H. Rich III, William Sheils, and Perkins, Thompson, Hinckley & Keddy, Portland, ME, were on brief for CMM Cable Rep, Inc.

James G. Goggin, Portland, ME, with whom Verrill & Dana was on brief for Ocean Coast Properties, Inc., et al.

Before TORRUELLA, Chief Judge, ALDRICH, Senior Circuit Judge, and SELYA, Circuit Judge.

TORRUELLA, Chief Judge.

CMM Cable Rep., Inc. ("CMM") appeals from the district court's grant of summary judgment dismissing all but one of its claims for federal copyright, trademark, and trade dress infringement and related state law claims. *See CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.*, 888 F.Supp. 192 (D.Me.1995). CMM brought suit against Ocean Coast Properties, Inc. (radio station WPOR), several of WPOR's executives, and its graphic design consultant (collectively referred to as "WPOR") alleging infringement of CMM's employment theme-based radio promotional contest by WPOR's similar promotion. The only claim to survive summary judgment—copyright infringement by WPOR's direct mail brochure—was tried to a jury, whose verdict CMM also appeals. Also before us is WPOR's cross-appeal from the district court's denial of summary judgment on CMM's only surviving claim. We affirm the district court's summary judgment and the jury verdict. In so doing, we address CMM's copyright arguments but neither address its trademark nor trade dress argu-

ments as we find those waived. Finally, we decline to address WPOR's cross-appeal.

## FACTUAL BACKGROUND

As this is primarily an appeal from the grant of summary judgment, we review the summary judgment materials[1] in the light most favorable to CMM, the nonmovant, drawing all reasonable inferences in its favor. *Alan Corp. v. Int'l Surplus Lines Ins. Co.*, 22 F.3d 339, 341 (1st Cir.1994). Under this review,[2] those materials show the following.[3]

CMM produces and markets direct mail promotional campaigns to assist radio stations in preserving and increasing listenership. Operating on a national level, CMM markets its services to radio stations nationwide by sending radio stations sample promotional materials that bear copyright and trademark notifications. Its services are provided on a "market exclusive" basis, as its

1. The parties dispute what the summary judgment materials include. WPOR maintains that the district court had an extensive factual record before it when it decided the motion for summary judgment, noting that in addition to the pleadings, affidavits, exhibits and deposition transcripts, the record included the transcript of the three-day hearing on CMM's motion for preliminary injunction. CMM disagrees, indicating in its reply brief that the district court based its decision solely upon facts properly presented in the parties' Local Rule 19 Statements of Facts. *See CMM Cable Rep. Inc.*, 888 F.Supp. at 194 n. 2.

   Without resolving this disagreement, we review the district court's grant of summary judgment based on the Local Rule 19 filings, noting particularly that CMM maintains that it is entitled to prevail "even with such a sparse snippet of the entire record under consideration." CMM's Reply Brief, p. 38. Furthermore, as we discuss below, we find no abuse of discretion by the district court in its application of Local Rule 19 in this case. Finally, we add that irrespective of how the summary judgment record is characterized, based on our independent review the outcome of this appeal would be the same.

2. Of course, to the extent that we are called upon to review the jury verdict, we will review when necessary the evidence presented during the trial in the light most hospitable to the jury's verdict. *See United States v. Staula*, 80 F.3d 596, 599 (1st Cir.), *cert. denied*, — U.S. —, 117 S.Ct. 156, — L.Ed.2d — (1996); *United States v. Ortiz*, 966 F.2d 707, 711 (1st Cir.1992), *cert. denied*,

promotions are only effective if sold to a single radio station in a particular market.[4] CMM's radio station customers spend roughly $30,000 per campaign for CMM to prepare all printed materials associated with its on-air promotion and handle the actual mailing.

At the center of this litigation are two of CMM's most successful direct mail radio promotions, entitled "Payroll Payoff®" and "Paycheck Payoff®," which it registered as servicemarks in 1991. CMM owns registered copyrights for its promotional materials prepared in connection with these promotions.[5] Payroll Payoff® and Paycheck Payoff®, (collectively referred to as "Payroll Payoff®"),[6] have been marketed to and purchased by numerous radio stations nationwide, to whom CMM has continuously provided copyright notice regarding its promotional materials. The general idea underlying Payroll Payoff® is to entice a lis-

506 U.S. 1063, 113 S.Ct. 1005, 122 L.Ed.2d 154 (1993).

3. Because CMM argues that many of the facts and the inferences to be drawn therefrom are in dispute, we include here only a sketch of the basic undisputed facts, addressing supposedly disputed facts and inferences as they arise.

4. This "market exclusivity" appears to be standard practice in the business of radio station promotional campaigns: radio stations generally expect that the company from which they purchase a promotional campaign will not sell the same campaign to a competing radio station.

5. CMM attached to its verified complaint two copyright registration certificates encompassing the "entire text and graphic design" of certain informational brochures. Although the corresponding brochures were not attached to these certificates, CMM identified them and others during the preliminary injunction hearing. CMM's unverified amended complaint, filed after the district court's preliminary injunction decision and before WPOR's motion for summary judgment, includes six copyright registration certificates with their corresponding brochures attached. Among these are the certificates and brochures attached to the verified complaint and identified during the preliminary injunction hearing. *See* footnote 9, *infra*.

6. As CMM explains, although different in name, Payroll Payoff® and Paycheck Payoff® involve the same underlying promotion: the name used is a function of the station's music format. Because CMM refers to them collectively as "Payroll Payoff®," we do as well.

tener to tune into the radio station by promising the listener payment by the radio station of an "hourly wage" if the listener calls in after his or her name is selected and read on the air. One name is read each hour during a pre-announced time and, if the listener calls in when his or her name is called, the listener goes "on the payroll" or "on the clock" as the radio station's "employee," earning an "hourly wage." If the named listener does not call within the time limit, the previous successful caller stays "on the payroll" and continues to be paid until replaced by a named listener who does call in on time. All contestants who successfully go "on the payroll" are eligible for a grand prize drawing at the end of the promotion period. Listeners enter the promotion by submitting their names to the radio station in response to direct mail pieces containing mail-in or fax-in reply forms. *See CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.*, 888 F.Supp. 192, 195 (D.Me.1995); *CMM Cable Rep., Inc. v. Keymarket Communications, Inc.*, 870 F.Supp. 631, 633–34 (M.D.Pa.1994).

Direct mail radio contest promotions having an accumulating cash prize, such as those involved in the instant case, have certain standard, inherent characteristics, which include: (i) inviting a potential listener to enter the promotional contest, (ii) requiring the contestant to listen to the station to determine the right moment to participate, and (iii) requiring the contestant to telephone the station at a designated time. CMM's principal, Nancy Izor ("Izor"), "borrowed" the idea for its payroll promotions from an earlier radio promotion she heard called "Working Women's Wednesday," in which female listeners called in on Wednesday to be placed on the radio station's "payroll" to earn an "hourly wage" (the "WWW promotion" or "WWW"). Izor had in her possession the radio station's typewritten sheet of contest rules for the WWW promotion, of the kind stations make available to participants upon request. In contrast to the WWW promotion, CMM's version runs all week, is open to men as well as women, and the cash prize accumulates hourly. Another difference is that CMM's version involves supporting "printed collateral" materials; the WWW

promotion was an on-air promotion only without any accompanying promotional materials. CMM's direct mail brochures are original work products of CMM.

WPOR is a popular country music radio station operating out of Portland, Maine, and serving the greater metropolitan area and eight surrounding counties. In the summer of 1994, WPOR contacted CMM to inquire about running one of CMM's payroll promotions with a view to bolstering its listenership ratings. WPOR admitted to having in its possession, prior to contacting CMM, one of CMM's brochures, identified during the preliminary injunction hearing as the brochure prepared for radio station WKIX in Punta Gorda, Florida (the "KIX brochure"). CMM declined to license its promotion to WPOR, out of loyalty to one of WPOR's competitors in the Portland, Maine, market, and also informed WPOR of its copyrights and trademarks for its payroll promotions. After being informed by its independent media consultant, McVay Media Consultants ("McVay Media"), that payroll-type games were not original to or conceived by CMM, WPOR decided to create its own promotion based upon the employment analogy of earning an "hourly wage." WPOR's promotion, entitled "Payday Contest," involved a direct mail brochure as well as various supporting materials, consisting of newspaper and television advertisements, faxes and on-air script.

Competing against other local radio stations for listeners in the Portland-based market, WPOR ran its promotion from late September through December 14, 1994, during a period known in the radio industry as the fall "sweeps period," when the rating firm Arbitron measures the listenership share of each station in the Portland market. Despite running the Payday Contest, WPOR's listenership in the fall 1994 sweeps period declined from its previous levels. CMM received two phone calls from WPOR's competitors inquiring whether WPOR's promotion was produced by CMM.

WPOR's Payday Contest brochure was designed and produced by Graphics North, Inc. ("Graphics North"). Before it was designed, WPOR gave Graphics North's James Spizuo-

co ("Spizuoco") some copy and CMM's KIX brochure and instructed him "not to make it look like [the KIX brochure]." Spizuoco testified that he looked at the KIX brochure and then put it away because he "[did not] want to be influenced by it."

As the district court noted, a comparison [7] of WPOR's Payday Contest brochure and CMM's KIX brochure reveals that

> CMM's KIX brochure and the WPOR brochure ... have many striking similarities. Their size (8½" × 14") and folds are almost identical; their layout is the same in the sense that it is horizontal for all but the mailer, which is vertical and appears in a 3″ serrated form to the far right; and the participation steps—1. "FILL OUT," 2. "TUNE IN," and 3. "CALL IN"—are an important textual element. On the first page of both brochures the radio station is identified at the top, the name of the contest comes in the middle, the number of dollars available for prizes comes about three-quarters of the way down, and the last line on the page of each is "JUST FOR LISTENING." In both instances, when the brochure is opened, the top left-hand corner begins "Listen to ..." and then the radio station is identified. At the top right of the open KIX brochure the copy reads "the best in hot new country." Across the top of the WPOR brochure appears "the best in today's hot country and your all time favorites!" At the left side of the open brochure the KIX version states: "Call in, clock in and make $50 an hour!" The WPOR brochure in almost the same position states "Call in ... punch in and you can earn $25 an hour!" Each brochure has an arrow next to that copy with the words inside the arrow: "Here's how." In step 3 of the contest participation process, the KIX brochure states: "Call in, clock in & win!" In step 3, the WPOR brochure states: "Call in, punch in & win!" Under this heading the KIX brochure goes on to state: "When you hear your name, call: (phone number) within 10 minutes and 'clock in'!" The WPOR brochure analogue is: "When you hear your name announced on the air, call in and go

'on the clock.'" At the lower right in both brochures appears the station identification. In the lower middle in both brochures appears the copy "complete contest rules available at (radio station)." In the return mail portion, the KIX brochure contains a check filling up the lower half of the return mailer; the WPOR brochure replaces the check with a bogus $25 bill located in almost the identical position. (The location of the return address and postal permit are standard and insignificant.).

*CMM Cable Rep.*, 888 F.Supp. at 196 (internal record citations omitted). In addition, on the detachable entry form, which requests the same standard information (name, address, telephone number and birthday), CMM's brochure reads: "P.S. Make copies for friends and co-workers. They can listen and win, too! Save postage and enter faster ... FAX entries to (fax number)." WPOR's analogue reads: "P.S. Feel free to make copies for your friends and neighbors so they have a chance to listen and win too!"

A comparison also reveals differences between the two brochures, including typestyle, colors, and certain layout elements. CMM's KIX brochure uses a cowboy boot and lariat motif with the boot overflowing with dollar bills while WPOR's uses a time clock. The text on the front page above the grand prize also differs in accordance with their different underlying motifs: while CMM's reads "[r]ound up your share of over (grand prize)," WPOR's reads "[i]t's time to punch in for your share of more than (grand prize)." In addition to dissimilar layouts, the entry forms request different information: CMM's includes two separate boxes requesting information regarding the listener's home address as well as employment while WPOR's does not include any address boxes and does not request employment information. Also unlike CMM's brochure, WPOR provides six little boxes to be checked in response to the statement: "Here's when I'm most likely to be listening to [WPOR]." The entry forms also differ in that CMM refers to it as a "time card" while WPOR refers to it simply

7. *See* appendices following this opinion.

as an "entry form."[8] Finally, with respect to WPOR's supporting materials, a review shows that they contain much of the same language used in WPOR's brochure which, in turn, is similar to that used in CMM's brochure.

## PROCEDURAL BACKGROUND

On October 3, 1994, CMM filed its complaint seeking damages and injunctive relief against WPOR, claiming infringement of CMM's copyrights, trademarks, and trade dress in violation of federal law, and making similar state law claims. After three days of hearings, the district court granted a preliminary injunction against WPOR's use of its Payday Contest brochure,[9] but did not enjoin WPOR from continued use of the Payday Contest itself, its title, the employment metaphor, the broadcast copy, or the other collateral and advertising materials. *See CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.*, 879 F.Supp. 132 (D.Me.1994). CMM appealed that interlocutory order. A panel of this court held that the appeal had been rendered moot when WPOR completed airing the contest and did not address the merits of the underlying appeal. *See CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.*, 48 F.3d 618 (1st Cir.1995).

Prior to trial, on March 13, 1995, WPOR moved for summary judgment on all of CMM's claims. With respect to CMM's copyright claims, WPOR moved for summary judgment on the grounds that the elements allegedly infringed—the radio promotion itself, the employment metaphor, the employment language and the promotion's instructions—were unprotectable for a variety of reasons. On June 1, 1995, the district court entered its amended order on WPOR's motion for summary judgment, granting summary judgment in favor of WPOR on all counts of CMM's complaint, except for the claim for copyright infringement relating to the Payday Contest brochure. *See CMM Cable Rep.*, 888 F.Supp. at 203.

As in its preliminary injunction decision, the district court based its copyright analysis in its summary judgment decision only upon the KIX brochure as it was the only brochure to which WPOR had admitted access and upon which CMM ultimately based its copyright infringement claim. Specifically, the district court held that "[g]iven the striking similarities in the two brochures, CMM easily [met] its summary judgment burden of showing that there is a triable issue of copying."[10] *Id.* at 197. It dismissed the remainder of CMM's copyright claims, however, on the basis that copyright protection did not extend to: (i) the ideas, concepts, or methodologies constituting the promotional contest itself; (ii) the unoriginal, but otherwise protectible, employment metaphor;[11] and (iii) the language used in the supporting materi-

**8.** Across the top of CMM's entry form a single line states: "Mail this time card today ... The first 500 received win a free KIX country t-shirt." In the top right half of WPOR's, two lines read: "Fill out the entry form and mail or fax to WPOR (number) for your chance to earn $25 an hour!" In contrast, CMM's includes a checked box in the lower left corner next to text that provides: "Yes! I'll be listening for my chance to make $50 an hour!"

**9.** Although no copyright registration certificate was presented for the KIX brochure, the district court based its preliminary injunction analysis of the likelihood of success of CMM's copyright claim upon this brochure. It did so given that it was the only brochure to which WPOR's access was undisputed and because it was also undisputed that CMM had filed for its registration. *See CMM Cable Rep.*, 879 F.Supp. at 135.

**10.** With respect to the brochure, the district court noted that "[i]ndeed, summary judgment

could also—but not quite—go in CMM's favor." *CMM Cable Rep.*, 888 F.Supp. at 197. We note that in its summary judgment decision the district court did not specify which infringement standard it used, although in its preliminary injunction decision it noted that there was actionable copying "regardless of what infringement standard is used." *CMM Cable Rep.*, 879 F.Supp. at 137 & n. 3 (citing to a discussion of the various tests in 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[A] (1995) (hereinafter "Nimmer")); *see Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 606–09 (1st Cir.1988) (discussing the various tests). We do not need to address this issue as it does not affect the outcome of the appeal.

**11.** On this point, the district court concluded that, "although ... the employment metaphor is copyrightable expression ... it was not an original contribution of CMM." *CMM Cable Rep.*, 888 F.Supp. at 197.

als which were both unoriginal and consisted only of uncopyrightable words and short phrases. *See id.* at 197–98.

With respect to CMM's trademark claims, the district court applied this Circuit's eight-factor confusion test, *see* 15 U.S.C. § 1114(1)(a); *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 29 (1st Cir.1989), and concluded that no reasonable jury could find a likelihood of confusion based on the facts presented. *CMM Cable Rep.,* 888 F.Supp. at 202.[12] Relying on this analysis as well as its observation that many of the similarities between the brochures were functional aspects of a radio promotion brochure and thus not protectible as trade dress, the district court dismissed CMM's trade dress claim on the basis that no reasonable jury could find, based on a comparison of the non-functional elements of the brochures, that the trade dress of the brochures is likely to confuse radio station promotional decisionmakers as to the source of each.[13]

CMM subsequently moved for reconsideration of the summary judgment, which was denied. WPOR's alleged infringement of four of CMM's brochures was tried to a jury on July 18–21, 1995.[14] The jury first concluded that CMM had a valid copyright in all four brochures. It then concluded that WPOR had not copied any original elements of the brochures in its Payday Contest brochure and judgment was accordingly entered in WPOR's favor. CMM timely filed a motion for judgment as a matter of law following the verdict, arguing that there is "no legally sufficient evidentiary basis for a reasonable jury to find that there was no copying of the text, layout and/or design of CMM's brochures—elements the jury had already concluded were original to CMM when finding the copyrights valid—since WPOR used virtually identical text, layout

and design in its 'Payday Contest' brochure." The district court denied CMM's motion.

Before us then is CMM's appeal of the district court's June 1, 1995, grant of summary judgment in WPOR's favor, its June 23, 1995, denial of CMM's motion for reconsideration, the jury verdict and the court's August 17, 1995, final judgment rendered thereon disposing of all remaining issues. Also before us is WPOR's cross-appeal from the district court's holding in its grant of summary judgment that "the employment metaphor is protectable expression ... [and] that the use of employment-related terms and images in the various tangible works associated with CMM's promotions is protectable expression." *Id.* at 197.

The district court had jurisdiction by virtue of 15 U.S.C. §§ 1121 and 1125, 28 U.S.C. §§ 1331 and 1338(a), 28 U.S.C. §§ 1332(a) and 1338(b), and the doctrine of pendent jurisdiction. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## I. SUMMARY JUDGMENT—COPYRIGHT INFRINGEMENT

CMM contends that the district court improperly granted WPOR's motion for summary judgment on its copyright infringement claim with respect to all of WPOR's Payday Contest materials, except the brochure.

### A. Standard of Review

■■■■ We review the district court's grant of motion for summary judgment *de novo,* according no deference to the district court's decision. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 144 (1st Cir.1994); *Sheinkopf v. Stone,* 927 F.2d 1259, 1262 (1st Cir.1991). Summary judgment is appropriate when " 'the pleadings, depositions, answers to interrogatories, and admissions on file, togeth-

---

12. In reaching its decision, the district court identified radio station marketing and promotion decisionmakers as the commercially relevant persons or entities, noting that "CMM has presented few facts and even fewer arguments to support its trademark and trade dress infringement claims, and what it has presented deals solely with the likelihood of confusion of radio station management and consultants." *CMM Cable Rep.,* 888 F.Supp. at 200.

13. For the district court's disposition of CMM's state law related claims, from which CMM does not appeal, *see CMM Cable Rep.,* 888 F.Supp. at 202–03.

14. Because disposition of this appeal does not require understanding how, in addition to the KIX brochure, three other CMM brochures went to the jury for findings of both copyright validity and copying, we do not detail the full story.

er with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1, 2 (1st Cir.1996) (quoting *Kelly v. United States*, 924 F.2d 355, 357 (1st Cir.1991)); *see* Fed.R.Civ.P. 56(c). Pursuant to Rule 56(c), the party opposing the motion must produce evidence on which a reasonable finder of fact, under the appropriate burden of proof, could base a verdict for the opposing party; if that party cannot produce such evidence, the motion must be granted. *Grubb*, 88 F.3d at 2.

### B. The Legal Framework

■ To establish copyright infringement, a plaintiff must prove (i) ownership of a valid copyright, and (ii) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1295–96, 113 L.Ed.2d 358 (1991); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir.1995) (collecting cases), *aff'd,* —— U.S. ——, 116 S.Ct. 804, 133 L.Ed.2d 610 (1996); *Concrete Machinery*, 843 F.2d at 605; 3 Nimmer § 13.01, at 13–5 to 13–6. To show ownership of a valid copyright and thus satisfy the first prong under *Feist*, a plaintiff must prove that the work as a whole is original and that the plaintiff complied with applicable statutory formalities. *Id.*

■ Once the plaintiff produces a certificate of copyright, which constitutes prima facie evidence of copyrightability in judicial proceedings, the burden shifts to the defendant to demonstrate why the claim of copyright is invalid. *See* 17 U.S.C. § 410(c); *Lotus*, 49 F.3d at 813; *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 763 (2d Cir.1991). "At this juncture, it is incumbent upon a putative infringer to establish that the work in which copyright is claimed is unprotectable (for lack of originality) or, more specifically, to prove that the portion of the copyrighted work actually taken is unworthy of copyright protection." *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996). Upon defendant's proof of lack of originality by plaintiff through evidence that the plaintiff copied from prior works, the burden shifts back to the plaintiff to prove originality. *See, e.g., Masquerade Novelty, Inc. v. Unique Industries, Inc.*, 912 F.2d 663, 667 (3d Cir.1990); *Midway Mfg. Co. v. Bandai–America, Inc.*, 546 F.Supp. 125, 140 (D.N.J.1982); Nimmer, § 12.11[B] at 165–67. "The burden on the defendant to rebut the presumption varies depending on the issue bearing on the validity of the copyright. Where, for example, the issue is whether the copyrighted article is 'original,' the presumption will not be overcome unless the defendant offers proof that the plaintiff's product was copied from other works or similarly probative evidence as to originality." *Masquerade Novelty*, 912 F.2d at 668–69; *see* Nimmer, § 12.11[B], at 165–67.

■ To show actionable copying and thereby satisfy *Feist*'s second prong, "a plaintiff must first prove that the alleged infringer copied plaintiff's copyrighted work as a factual matter; to do this, he or she may either present direct evidence of factual copying or, if that is unavailable, evidence that the alleged infringer had access to the copyrighted work and that the offending and copyrighted works are so similar that the court may infer that there was factual copying (i.e., probative similarity)." *Lotus Development*, 49 F.3d at 813. Next, a plaintiff must "prove that the copying of copyrighted material was so extensive that it rendered the offending and copyrighted works substantially similar." *Id.* "Even if both showings are made, however, the trier of fact may nonetheless find no copying if the defendant shows independent creation." *Grubb*, 88 F.3d at 3.

### C. Discussion

The crux of this appeal stems from WPOR's arguments below that CMM's brochure is unprotectable for lack of originality and/or that the "heart" of CMM's Payroll Payoff® which WPOR allegedly infringed is unworthy of copyright protection. *See, e.g., Bateman*, 79 F.3d at 1541. As we noted above, the district court agreed with most of WPOR's arguments when it dismissed all of CMM's claims except its claim that WPOR infringed its brochures. *See CMM Cable Rep.*, 888 F.Supp. at 197–98. On appeal,

CMM advances five challenges in support of its argument that the district court erred when it granted summary judgment in favor of WPOR: (i) the originality of CMM's expression of the employment metaphor should have gone to the jury; (ii) WPOR's supporting materials should have gone to the jury; (iii) the error of the district court's rulings on originality and the supporting materials is made clear by the resulting inconsistent and incongruous jury verdict; (iv) WPOR's access to other CMM brochures remained a disputed material fact at the summary judgment stage; and (v) the district court improperly used a "literal dissection analysis" of protected and unprotected elements.

We address each in turn, beginning with the last, as we review de novo whether CMM "escape[s] the swing of the summary judgment axe," *Mack v. Great Atlantic and Pacific Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989), keeping in mind that CMM has the burden of proving that a genuine issue of material fact exists that would preclude judgment as a matter of law.

#### i. The District Court's "Dissection Analysis"

CMM first states in a footnote that the district court erred when it applied a "dissection analysis" of protected and unprotected elements which, while logically used in compilation cases, was inappropriate here. *See Lotus Development*, 49 F.3d at 812 (requiring a showing of "constituent elements of the work that are original"). Then, in its reply brief, CMM adds that, because the brochures and, by extension, the supporting materials, combine both fact and fiction, under both *Feist* and *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985), "even if a direct mail brochure is deemed to have factual elements ... WPOR was obligated to disseminate those facts in a manner which did not impede the most expressive elements of CMM's work—its text, its layout and its 'heart'." CMM's Reply Brief, p. 16. Because the brochure design and copy consti-

tuted the "heart" of CMM's work, and because its inability to sell it in the Portland market diminished its copyright value, CMM concludes, copyright infringement occurred through WPOR's brochure and, by extension, its supporting materials.

As an initial matter, CMM seems to be making two distinct arguments. The first faults the "dissection" of the copyrighted and accused works in order to identify protectable elements such that the court might determine as a matter of law whether or not the alleged infringer copied protected elements. The second seems to urge us to find copyright infringement on the ground of "unfair use" within the meaning of copyright law. *See* 17 U.S.C. § 107; *Harper & Row*, 471 U.S. at 547 n. 2, 105 S.Ct. at 2223 n. 2. We address only the first, finding the second waived to the extent that it can be interpreted as advancing a fair use argument: CMM "is not entitled to raise arguments on appeal that it failed to present to the district court." *Equine Technologies, Inc. v. Equitechnology, Inc.*, 68 F.3d 542, 546 (1st Cir.1995) (citing cases).[15]

■ As to CMM's first argument, we simply do not agree that the district court's "dissection analysis" vitiates the letter and intent of copyright law in this case. Rather, it comports with a key tenet of copyright law: "[i]nfringement is shown by a substantial similarity of *protectible expression*, not just an overall similarity between the works." 3 Nimmer § 13.03[F], at 13–124 (footnotes omitted). Indeed, we note that the Copyright Act itself seems to mandate the "dissection" of works into copyrightable and uncopyrightable elements. *See, e.g.,* 17 U.S.C. § 103(b) (1995) (providing that copyright in compilation or derivative work extends only to material contributed by author as distinguished from preexisting material). In other words, "[e]ven when [as here] extended similarity exists between [the works] when taken as a whole, the analysis is not finished. To the extent that such similarity inheres in ideas, which are by definition unprotected, or

---

15. We note two observations: First, CMM provides no record citation for its bald assertion that WPOR's alleged infringement has rendered it unable to sell "Payroll Payoff" in the Portland market. Second, we essentially respond to the crux of CMM's infringement-of-its-heart argument when we review the district court's grant of summary judgment on the supporting materials.

in expression that is not proprietary to plaintiff, then an essential ingredient is lacking from plaintiff's *prima facie* case." 3 Nimmer § 13.03[B][2], at 13–67.

With this in mind, the district court's alleged application of the "dissection analysis" can be understood thus:

> By dissecting the accused work and identifying those features which are protected in the copyrighted work, the court may be able to determine as a matter of law whether or not the former has copied protected aspects of the latter. The court can also determine, in at least a general way, those aspects of the work that are protected by the copyright and that should be considered in the subsequent comparative analysis under the ordinary observer test. Assuming copying of protected aspects is established, the trier of fact can then assess pursuant to the "ordinary observer test" whether there is substantial similarity between the protected expression and the accused work.

*Concrete Machinery,* 843 F.2d at 608–09 (concrete statues and ornamental articles); *see Lotus Development,* 49 F.3d at 813 (computer program).

The foregoing notwithstanding, we certainly recognize the potential "danger ... that courts ... will so 'dissect' the work as to classify all its elements as unprotectable ... [thereby possibly] blind[ing it] to the expressiveness of their ensemble." Jane C. Ginsburg, *Four Reasons and a Paradox: The Manifest Superiority of Copyright over Sui Generis Protection of Computer Software,* 94 Colum.L.Rev. 2259, 2561 (1994) (noting that when courts distinguish public domain "idea" from protected "expression" this danger is not limited to computer software); *cf. Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996, 1002 (2d Cir.1995) (noting that dissection analysis, extended to its logical conclusion when determining work's copyrightability, might result in conclusion of no originality). We do not think, however, that this danger is present in the instant case: at both the preliminary injunction and summary judgment stages, the district court "ke[pt] sight of the [brochure] as a whole," Ginsburg, 94 Colum.L.Rev. at 2561, recognized it was un-

disputedly an "original work of CMM," focused on the "striking similarities" between the parties' brochures, and permitted the infringement question to go to the jury, despite concluding that most—if not all of the text—consisted of uncopyrightable elements. *See CMM Cable Rep.,* 888 F.Supp. at 197. Furthermore, as we discuss below, we do not think that the lower court's approach resulted in the supporting materials being unfairly taken away from the jury or necessarily led to an inconsistent jury verdict.

Finally, as we view this case, because the parties do not dispute the validity of CMM's copyrights in its brochures or otherwise appeal from the jury's verdict so finding, resolution of this appeal essentially turns on the infringement issue of whether WPOR's alleged copying was of protected elements and, more specifically, of any "original contributions" by CMM. At its core, what drives CMM's appeal is the district court's conclusion that the employment metaphor and CMM's expression thereof—the fictional element of "Payroll Payoff"®—was not original within the meaning of copyright law. This conclusion resulted in there being very few, if any, copyrightable elements beyond graphics, selection and/or arrangement, upon which the jury could base a verdict for copyright infringement. In turn, the "dissection analysis" undercut, as we discuss below, CMM's copyright infringement claim regarding WPOR's supporting materials.

### ii. CMM's Employment Metaphor & Expression Originality: Waiver

A threshold issue is whether, as WPOR maintains, CMM has waived this argument. WPOR asserts that to the extent that CMM argues that it is appealing the district court's ruling that the employment theme was not protected by copyright law due to a lack of originality, CMM has waived its right to appeal this issue by its failure to object to the court's jury instructions on this point: "there is no copyrightable interest in ... the work or employment metaphor." WPOR argues that an appeal of a prior determination of the trial court that is repeated in the court's instructions to the jury is, in essence, a revisiting of the point and requires an

objection to the instruction. *See Wells Real Estate v. Greater Lowell Bd. of Realtors,* 850 F.2d 803, 809 (1st Cir.1988) (noting that "a long line of precedents in this circuit" instructs that failure to raise an objection subsequent to the actual charge constitutes waiver under Fed.R.Civ.P. 51); *McGrath v. Spirito,* 733 F.2d 967, 968 (1st Cir.1984) ("We have held that the rule requires that the objection to jury instructions be made after the charge, not before."). Thus, WPOR concludes, CMM's objection is too late and results in a waiver of the objection and the issue under Fed.R.Civ.P. 51. In all events, we need not resolve this contretemps. Assuming, *arguendo,* that the issue is properly preserved, we nonetheless reject CMM's position on the merits.

### Originality: The Law and The District Court's Decision

Before addressing CMM's arguments, we review the applicable law and the district court's opinion. As the district court noted, the Supreme Court has made clear that

> [t]he *sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.

*Feist,* 499 U.S. at 345, 111 S.Ct. at 1287. As CMM correctly points out, the threshold of creativity within the meaning of the copyright statute is very slight:

> To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily as they possess some creative spark, 'no matter how crude, humble or obvious' it might be.... Originality does not signify novelty; a work may be original even though it closely resembles other works *so long as the similarity is fortuitous, not the result of copying.*

*Id.* (emphasis added). Furthermore, "copyright protection may extend only to those components of a work that are original to the author..... [I]f the selection and arrangement are original, these elements of the work are eligible for copyright protection." *Id.* at 348–49, 111 S.Ct. at 1289 (internal citations omitted). What is protectible then is the "author's original contributions," *id.* at 350, 111 S.Ct. at 1290. "No matter how original the [contribution], however, the [unprotectable elements] themselves do not become original through association." *Id.* at 349, 111 S.Ct. at 1289.

Despite this low threshold, the district court concluded that neither the employment metaphor itself nor CMM's expression of it were "original" within the meaning of copyright law and, thus, that neither were copyrightable. As to the employment metaphor itself, the district court concluded that it was not an original contribution of CMM, because Izor, the "creator" of CMM's payroll games, testified during the hearing on the preliminary injunction that the employment concept originated from WWW. As to CMM's *expression* of the employment metaphor, the district court rejected CMM's argument that Izor added a sufficient modicum of originality by expanding the promotion to include both sexes, to run all week (as opposed to only Wednesdays) and to add a grand prize. According to the district court, "these 'original' contributions do not extend or vary the employment metaphor; they simply expand the operating scope of the promotion." *CMM Cable Rep.,* 888 F.Supp. at 198. In addition, the district court concluded that these contributions lacked the minimal quantum of creativity required for copyright, reasoning that expanding the promotion to include men and to run for five days "is of the same magnitude as the geographic selection and alphabetic arrangement of telephone numbers in *Feist." Id.* at 198 (citing *Feist,* 499 U.S. at 363, 111 S.Ct. at 1296–97). In reaching its conclusion it also noted that CMM admitted that radio promotions generally run five days a week and are open to men and women.

With this in mind, we turn now to CMM's arguments.

### Originality: A Jury Question?

CMM first argues that the district court erred by ruling as a matter of law on the

originality of CMM's expression, contending that originality is a fact question determinable by the jury, not by the court on summary judgment. In support of this proposition, CMM cites to three cases: *North Coast Industries v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1034 (9th Cir.1992) (holding that whether copyright holder's "expression" of "idea" inspired by French designer was copyrightable was for jury where it was not clear that expression was substantially similar and differences merely trivial); *Dezendorf v. Twentieth Century–Fox Film Corp.*, 99 F.2d 850 (9th Cir.1938) (holding that common-law copyright suit could not be summarily disposed of on motion to dismiss where suit involved question of originality which was one of fact and not of law); *Knickerbocker Toy Co., Inc. v. Winterbrook Corp.*, 554 F.Supp. 1309, 1318 (D.N.H.1982) (holding that summary judgment on the question of originality must be denied if there is a material question of fact as to the issue of independent creation, such as where evidence exists from which a jury could find the existence of an original aesthetic appeal).

While we do not dispute that the question of originality can be a question of fact for the jury, it is not necessarily so. *Feist* itself makes this clear. There, the Supreme Court decided the question of originality as a matter of law when it held that the white page listings in a telephone directory were not entitled to copyright protection because they lacked the requisite originality. *Feist*, 499 U.S. at 364, 111 S.Ct. at 1297; *see, e.g., American Dental Assoc. v. Delta Dental Plans Assoc.*, No. 92 C 5909, 1996 WL 224494, at *17 n. 2 (N.D.Ill.1996) (noting that "[w]hether a work is original is treated by some courts as a question of fact and others as a question of law"). We reject CMM's first claim of error, because courts clearly may determine the question of originality and, in turn, copyrightability so long as they do so in accord with the familiar rules governing summary judgment: where there are no genuine issues of material fact as to the originality of the work, such that no reasonable trier-of-fact could find originality, then the movant is entitled to judgment as a matter of law. *See, e.g., Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply*

*Co., Inc.*, 74 F.3d 488, 495 (4th Cir.) (finding no reversible error in court's instruction that "jury need not concern themselves with [question of copyrightability]" given court's ruling as a matter of law that works were "original" and, thus, subject to copyright protection), *cert. denied,* —— U.S. ——, 117 S.Ct. 53, —— L.Ed.2d —— (1996); *Mid America Title Co. v. Kirk*, 867 F.Supp. 673, 681 (N.D.Ill.1994), *aff'd*, 59 F.3d 719 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 520, 133 L.Ed.2d 428 (1995); *Magic Marketing, Inc. v. Mailing Services of Pittsburgh, Inc.*, 634 F.Supp. 769, 771–72 (W.D.Pa.1986) (noting that issue of copyrightability is typically resolved by a motion for summary judgment). Indeed, we note that in *North Coast*, relied upon by CMM, the Ninth Circuit noted that it "has not hesitated in granting summary judgment where no reasonable trier-of-fact could find substantial similarity." 972 F.2d at 1034.

### Originality: Is CMM's Expression Original?

On appeal, CMM does not dispute that it "borrowed" the employment metaphor, but instead insists that the district court erred in concluding that the employment metaphor itself and its expression thereof was not original within the meaning of copyright law. It essentially advances two arguments: (i) the district court misapplied the copyright concept of originality, imposing instead the higher patent-derived standard of novelty; and (ii) it failed to focus on the "true differences" between WWW and Payroll Payoff®, maintaining that the features contributed by CMM went far beyond the full week, both sexes, and grand prize features. According to CMM, it meets the low originality threshold because "Izor['s] expan[sion of] the employment phraseology she heard . . ., translat[ion of] the idea graphically and independent[ ] creat[ion of] employment images such as the time clock and newspaper classified ads" cannot be considered trivial additions, especially when coupled with other standard radio direct mail features never previously used together in one campaign. CMM's Brief, pp. 22–23. Finally, it also claims that whether payroll campaigns were

commonplace or in the "public domain" prior to Payroll Payoff® was a "hotly-contested issue" and, thus, the question of originality should have been decided by the jury.

At the outset, we dismiss CMM's claim that the district court imposed the patent-derived standard of novelty. As we noted above, the district court set forth the correct applicable law, *see CMM Cable Rep.*, 888 F.Supp. at 197–98, and, as we discuss, it did not err in its analysis.

■■■ That said, we turn first to the originality of the employment metaphor itself. Upon *de novo* review, we conclude that, by CMM's own admission, the similarity between the two promotions' employment concept—the use of the metaphor of earning an hourly wage—was, to borrow from *Feist, not* fortuitous but, rather, the result of copying. *See Feist,* 499 U.S. at 345, 111 S.Ct. at 1287. Indeed, not only does CMM concede that it "borrowed" the employment metaphor from WWW, it also concedes in its Statement of Disputed Facts that the WWW campaign used the employment phraseology to "get on the clock" which it also uses and claims WPOR infringed. Because "copyright protection may extend only to those components of a work that are original to the author," *Feist,* 499 U.S. at 348, 111 S.Ct. at 1289, we agree with the district court that the employment metaphor itself does not enjoy copyright protection as it was not an original contribution of CMM within the meaning of copyright law.

In so concluding, we do not dispute that, as CMM points out, "the mere borrowing of elements from previous works will not defeat copyrightability as long as the author has devised a new version of the work or has otherwise rearranged or transformed it so as to have made an original contribution." *Towle Mfg. Co. v. Godinger Silver Art Co., Ltd.,* 612 F.Supp. 986, 992 (S.D.N.Y.1985) (citing 1 Nimmer § 3.01, at 3–10 (1985 ed.)); *cf. Eden Toys, Inc. v. Florelee Undergarment Co., Inc.,* 697 F.2d 27, 35 (2d Cir.1982) (holding that variations, although minor, to preexisting copyrighted sketch of "Paddington Bear" were "original"). We also do not dispute that CMM, as it insists, devised its own embellished version of a payroll contest using an employment metaphor. However, as we discuss below, CMM's contributions building upon the borrowed employment metaphor are either insufficient to satisfy the minimal requirements of originality or are unprotectable elements.

Before explaining why we reach this conclusion, we add this: Because we affirm the district court's conclusion that the employment metaphor itself was not original to CMM and, thus, not copyrightable, we accept WPOR's invitation not to address its cross-appeal from the district court's conclusion that the "employment metaphor is protectable expression ... [and] that the use of the employment related terms and images in the various tangible works associated with CMM's promotions is protectable expression." *CMM Cable Rep,* 888 F.Supp. at 197. We prefer to do what the district court did at the preliminary injunction stage: decline to answer the "more difficult question"—determining whether copyright protection extends to the employment metaphor for the idea of an accumulating jackpot radio promotional sweepstakes on the basis that the metaphorical terminology of employment is protected expression—because we conclude that, even if protectible expression, it is not copyrightable here due to CMM's failure to meet the originality prong required for copyright protection. *See CMM Cable Rep.,* 879 F.Supp. at 135. By not addressing WPOR's cross-appeal, we neither address its merits nor comment on the correctness of the district court's conclusion nor, for that matter, the similar determination made by an earlier court. *See CMM Cable Rep., Inc.,* 888 F.Supp. at 197; *CMM Cable Rep., Inc.,* 870 F.Supp. at 633–34 (same).

■■■ We turn next to the originality of CMM's contributions expanding the scope of the WWW promotion. Upon *de novo* review, we affirm the district court's conclusion that CMM's expansion of the promotion's scope does not constitute the modicum of originality necessary for copyright protection, finding no error in its reasoning. We note that, even assuming, as we read the record most favorably to CMM, that there were few, if any, prior payroll campaigns and even assuming that CMM's expansive contributions were

original, they simply cannot enjoy copyright protection: to do so would be to erroneously extend copyright protection to a method of conducting a radio promotional contest.[16] *See* 17 U.S.C. § 102(b); *CMM Cable Rep.*, 888 F.Supp. at 197 (noting that CMM cannot copyright the ideas, concepts, or methodologies that constitute the promotional contest itself); *Anti–Monopoly, Inc. v. General Mills Fun Group*, 611 F.2d 296, 300 n. 1 (9th Cir.1979) (noting that game concepts are specifically not protected by the copyright laws). *Cf. Lotus Develop.*, 49 F.3d at 815 (holding that Lotus' menu command hierarchy is an uncopyrightable "method of operation"). As another court noted in a previous copyright infringement case brought by CMM, a copyright infringement claim is not established merely by virtue of the fact that the CMM Payroll Payoff® and the alleged infringer's campaigns share the same features involved in a radio promotional cash giveaway. *Keymarket*, 870 F.Supp. at 637. *Cf. Barris/Fraser Enterp. v. Goodson–Todman Enter.*, 5 USPQ.2d 1887, 1988 WL 3013 (S.D.N.Y.1988) ("For an infringement to be found, the copied material must be more than a stock element of television game shows."). Thus, we affirm the district court's ruling that, "[t]o the extent that CMM's complaint can be interpreted as claiming infringement on the promotion itself (i.e., a method of conducting a radio promotional contest), ... summary judgment [is granted] in favor of WPOR." *CMM Cable Rep.*, 888 F.Supp. at 197.[17]

■ Finally, we turn to the originality of CMM's alleged expansion of the employment phraseology, which, as CMM explains, is part of the "heart" of its expression which WPOR allegedly infringed. In response to WPOR's observation that CMM fails to point to any record evidence regarding what specific employment phraseology was original to Izor as opposed to having been "lifted" from the WWW promotion, CMM insists it had nothing tangible to copy when it created Payroll Payoff®.[18] Even assuming this is true, and that CMM's employment phraseology was original to it,[19] we nonetheless conclude that it is not subject to copyright protection. *See Lotus*, 49 F.3d at 818.

■ It is axiomatic that copyright law denies protection to "fragmentary words and phrases" and to "forms of expression dictated solely at functional considerations" on the grounds that these materials do not exhibit the minimal level of creativity necessary to warrant copyright protection. 1 Nimmer, 2.01[B], at 2–13–18; *see, e.g., Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1072–73 (2d Cir. 1992) (noting that single words and short phrases in copyrighted text are not copyrightable); *Magic Marketing*, 634 F.Supp. at 771 (noting that phrases describing envelope contents and instructing recipients are unprotectable); *Alberto–Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 711 (7th Cir. 1972) (holding that "most personal sort of deodorant" is short phrase or expression, not an "appreciable amount of text," and thus not

---

**16.** We view as somewhat disingenuous CMM's assertion that it does not claim a copyright interest in its actual radio promotion. Below, the relief CMM sought included enjoining WPOR from broadcasting its Payday Contest and, despite the fact that WPOR was enjoined from using its brochure, CMM appealed, *inter alia*, the district court's refusal to enjoin WPOR from broadcasting its promotion. *See CMM Cable Rep.*, 48 F.3d at 620.

**17.** We note too that various substantially similar features of the brochures—their 8½″ × 14″ size, folds, and horizontal layout with a vertical 3″ serrated entry form—are uncopyrightable as standard features or "stock elements" of a direct mail brochure (regardless of whether or not using a direct mail brochure was "original" to CMM). *See, e.g., Perma Greetings*, 598 F.Supp. at 447 (including blank forms designed for recording information in the list of uncopyrightable

works set forth in 37 C.F.R. § 202.1 (1983)); *Barris/Fraser*, 5 USPQ.2d at 1891 (noting in the context of television game shows that for infringement to be found the copied features must be more than "stock elements" of the show).

**18.** In support of this argument, CMM argues that, drawing all reasonable inferences in its favor, we should take as true that WWW was an on-air promotion only without any written promotional materials and that CMM received WWW's typewritten contest rules only after it had already created Payroll Payoff®.

**19.** As we noted earlier, CMM concedes that to "get on the clock" was used in WWW. Accordingly, we are inclined to view this employment expression and its related phraseology, such as, "clock in", as not original to CMM within the meaning of copyright law.

protectible); *Perma Greetings, Inc. v. Russ Berrie & Co., Inc.,* 598 F.Supp. 445, 448 (E.D.Mo.1984) ("Clichéd language, phrases and expressions conveying an idea that is typically expressed in a limited number of stereotypic fashions, [sic] are not subject to copyright protection.").[20] The Copyright Office's own interpretive regulations explicitly embrace this rule of non-copyrightability. *See* 37 C.F.R. § 202.1(a) (1994) (excluding from copyright protection "[w]ords and short phrases such as names, titles, and slogans" and "familiar symbols and designs").[21]

Here, the phraseology about which CMM claims infringement involves cliched language that is typically used to convey the idea of employment: "if you're still 'on the clock' at quitting time" and "clock in and make $50 an hour." In addition, CMM's "call in, clock in, and win" is nothing less than a slogan as it is clearly "a phrase expressing the aims or nature of an enterprise ... [and/or] a catch phrase used in advertising or promotion." Webster's II New Riverside Univ. Dictionary (1988). Even viewing the text as a whole, as CMM urges, it simply does not involve an appreciable amount of text or the minimal level of creativity necessary to warrant copyright protection; indeed, this is particularly true given CMM's concession that the phraseology to "get on the clock" was used in the WWW promotion. Furthermore, we cannot disregard the fact that, while perhaps not "dictated solely at functional considerations," the phraseology is nonetheless inescapably functional in that it tells potential participants how to participate and how the contest works; as such, it essentially communicates the promotion's "rules of the game". In addition, we are also cognizant that the limited space on, and costs of producing, the brochures favor (presumably) simple, catchy or hackneyed phrases. Accordingly, we conclude that the phraseology used by CMM in its expression of the employment metaphor, which itself was unoriginal to CMM in the first instance, is not protectible expression. *See, e.g., Magic Marketing,* 634 F.Supp. at

771 (noting that even "colorful descriptions, such as advertising slogans, are not accorded copyright protection").

In reaching this conclusion, we simply disagree with CMM that the foregoing cases do not support this result. While certainly distinguishable on their facts, these cases nonetheless stand for, or otherwise support, the proposition that copyright protection simply does not extend to "words and short phrases, such as names, titles, and slogans." 37 C.F.R. § 202.1(a) (1994). That said, we understand—and do not dispute—CMM's point that it has not claimed copyright protection in the phraseology alone but rather in its brochure as a whole. This, however, does not alter our conclusion. *Alberto–Culver* is particularly instructive. Just as CMM alleges that WPOR copied "the entire essence" or "heart" of CMM's brochures, in *Alberto–Culver* the plaintiff similarly alleged that the defendant copied the "same general image and thought." *Alberto–Culver,* 466 F.2d at 708. More important is the court's response to what it considered to be plaintiff's "strongest case[:] ... that [its] label copyright as a whole was infringed." *Alberto–Culver,* 466 F.2d at 710. While the court affirmed the district court's conclusion that "the label as a whole—as a pictorial composition—is copyrightable," *id.* it nonetheless reversed on the ground that the phrase "most personal sort of deodorant" is uncopyrightable as, *inter alia,* it is "a 'short phrase or expression' ... hardly qualify[ing] as an 'appreciable amount of original text.'" *Id.* (quoting *Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.,* 266 F.2d 541, 544 (2d Cir.1959)). Similarly, here, although CMM may have obtained a copyright in the brochures as a whole, the fact remains that copyright protection does not extend to its ordinary employment phraseology which lacks the minimal level of originality.

■ We also reach this conclusion despite CMM's implicit assertion, which we in no way doubt, that CMM and Izor invested a

---

**20.** Of course, we recognize that not all short, simple, declarative sentences fall within the meaning of 31 C.F.R. § 201.1(a). *See, e.g., Applied Innovations v. Regents of the Univ. of Minn.,* 876 F.2d 626, 635 (8th Cir.1989) (citing cases).

**21.** While this Copyright Office regulation "does not have the force of statute, it is a fair summary of the law." *Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.,* 266 F.2d 541, 544 (2d Cir.1959).

substantial amount of effort into customizing and developing Payroll Payoff®. However frustrating or disheartening as it may be, substantial effort is largely immaterial to the question of copyrightability. *See Feist,* 499 U.S. at 354–61, 111 S.Ct. at 1292–96 (rejecting the notion that copyright protection can be obtained merely through the "sweat of the brow"). That we so conclude with respect to the employment metaphor and its expression, however, does not necessarily leave CMM without any copyright protection in its brochures.[22] While the employment metaphor and its expression are not copyrightable given that "copyright protection may extend only to those components of a work that are *original* to the author," *Feist,* 499 U.S. at 348, 111 S.Ct. at 1289 (emphasis added), the jury reasonably found,[23] particularly after hearing Izor's testimony regarding her design of the brochure and her creation documents, that CMM's KIX brochure was nonetheless copyrightable as it was undisputed that "[its] selection and arrangement are original" and independent work products of CMM's Izor, *id. See Knitwaves,* 71 F.3d at 1004 (noting that *Feist* "makes clear [that] a work may be copyrightable even though it is entirely a compilation of unprotectible [sic] elements").

### iii. Supporting Materials

CMM argues that a side-by-side comparison of WPOR's supporting media—which consists of a newspaper ad, faxes, television advertisements, and on-air script—with CMM's brochures reveals that "direct plagiarism of the heart of CMM's work occurred." CMM's Reply Brief, at 9. It fur-

ther contends that, "because the supporting media parroted the WPOR brochure which the district court found likely to be a direct copy, the entry of summary judgment with respect to this media was incongruous error." *Id.* Upon *de novo* review, we affirm the district court's grant of summary judgment on WPOR's supporting materials.

As an initial matter, we note that, contrary to CMM's characterization, the district court did not "find" that WPOR's brochure was likely to be a direct copy; rather, it described their "striking similarities" and subsequently made a *sua sponte* observation that "summary judgment could also—but not quite—go in CMM's favor." *CMM Cable Rep.,* 888 F.Supp. at 197. Not only is this observation not "controlling,"[24] but it does not necessarily follow that it was "incongruous error" to treat the supporting materials differently from the brochures just because the brochures' "striking similarities" (which, as CMM points out, include the expression of the employment metaphor) also appear in the supporting materials. While CMM's KIX brochure and WPOR's supporting materials contain similar—even substantially similar—language, the controlling fact is that this similar language is simply uncopyrightable. As the district court properly concluded, and as we discussed above, the phrases "payday," "punch in," "go on the clock," and "begin earning $25 an hour," are uncopyrightable for one or both of two reasons: (i) the employment metaphor is unoriginal to CMM and/or (ii) these elements are made up of uncopyrightable words and short phrases. *See CMM Cable Rep.,* 888 F.Supp. at 198.

22. We do not need to decide whether the brochures are "useful articles" under 17 U.S.C. § 101, because their design incorporates pictorial and graphic features separable from, and independent of, its utilitarian function as a direct mail promotional material. While obviously related to its utilitarian function, the brochures' pictorial and graphic features are nonetheless independent from its function. *Cf., Magic Marketing,* 634 F.Supp. at 772 (concluding that envelopes, which were "unquestionably 'useful articles'," did not constitute a "pictorial [or] graphic" work where there were no pictures or designs imprinted).

23. Because the jury's verdict that CMM had a valid copyright in four of its brochures, including

the KIX brochure, is not on appeal, we do not review it or comment on its correctness.

24. It is plausible that, despite the district court's prior observation when it assessed CMM's likelihood of success at the preliminary injunction stage, *see CMM Cable Rep.,* 879 F.Supp. at 136, the district court did not grant CMM summary judgment on the substantial similarity of the brochures either because it believed (i) that the jury could credit Spizuoco's testimony and conclude that WPOR's Payday Contest was an independent creation and/or (ii) that, uncopyrightable elements aside, the jury could nonetheless find that there was no substantial similarity given the brochures' differences.

There is an additional reason, stemming from the fact that the parties are essentially running the same promotion—a direct mail radio promotion using the unoriginal employment metaphor—for which the procedures for participating are the same. CMM points to the following in support of its claim of "direct plagiarism of the heart of [its] work," CMM's Reply Brief, pp. 8–9: (i) the newspaper ad contains the same entry form found on the back of Payday Contest brochure and "generously borrows from CMM's brochures when it directs the listener to send it in"; (ii) the faxes tell the listener that they can "win big bucks just for listening"; (iii) the television advertisements encourage listeners "to punch in on our time clock and earn 25 dollars an hour in the WPOR Payday Contest" and to "[l]isten, punch in and win"; and (iv) the on-air script describes how to participate in the Payday Contest, introducing the idea with the statement that "smart people know about the other pay day [sic] with more than [$16,000] up for grabs.... WPOR's Payday Contest." *Id.*

■ Exposed, the "heart" consists essentially of "how to" elements, conveyed through the use of the unoriginal employment metaphor, that inform potential listeners about both the promotion and how to participate. In a somewhat similar scenario, we have previously held that where the rules of a promotional contest of the sweepstakes type were so straight-forward and simple, copyright protection did not extend to those rules. *See Morrissey,* 379 F.2d at 678 (questioned in Nimmer, § 13.03[B], at 13–81); *see also American Dental,* 1996 WL 224494 at *12 ("[W]hile there are no hard and fast rules about when merger occurs, the consensus is that the 'shorter a phrase is, the less likely it is to have accep[table] substitutes, thus barring protection under the [m]erger [d]octrine.'") (quoting Paul Goldstein, 1 Copyright § 2.7.3, at 2:100 (2d ed.1996)). Without going so far as to hold that the "rules" here are uncopyrightable *per se* under the "merger doctrine," *see id.* (discussing merger doc-

trine); *Concrete Machinery,* 843 F.2d at 606–07 (same); Nimmer, § 13.03[B], at 13–81, we nonetheless conclude that CMM cannot succeed on its infringement claim with respect to the text of the supporting materials. We do so under the "scenes a faire" doctrine as the complained-of similarities consist of unoriginal elements flowing from the undisputed standard and inherent characteristics of direct mail radio promotions and, as such, "flow from the logic and necessities of [these radio] game[s]." *Barris/Fraser,* 5 USPQ.2d at 1891 (stating that to prevail in infringement claim of television show copied material must be more than stock element).[25]

Thus, while the parties are essentially operating the same promotion, and while WPOR may well have decided to "copy" the ideas underlying CMM's promotion, WPOR's supporting materials do not constitute actionable copying to the extent that the similarities arise from uncopyrightable elements, such as the unoriginal employment metaphor or de minimis phraseology, or involve standard "how to" features of a direct mail radio promotion. Because the basis of CMM's infringement claim regarding the supporting materials boils down to alleged copying of uncopyrightable similarities, the district court properly granted summary judgment. This conclusion is not altered by CMM's claim that WPOR's access to other CMM brochures remained a genuine disputed fact. In its Reply Brief, CMM compares its KTK brochure with WPOR's newspaper advertisement, pointing out that its KTK brochure contains a time clock similar to that in WPOR's advertisement, suggesting copying by WPOR of, among other elements, that image. Even assuming, without deciding, that access remained a disputed fact or that WPOR had access to the KTK brochure, we would nonetheless affirm the district court's grant of summary judgment on the supporting materials. Not only is the image of the time clock an uncopyrightable familiar symbol used to express the unoriginal employment phraseology to "get on the clock," the

---

25. While the rationales underlying the merger and scenes a faires doctrines are somewhat similar in that both are concerned with preventing a monopoly on commonplace ideas, they differ: merger applies when the idea and expression are inseparable while scenes a faire applies when the similarity of expression results from stock scenes or elements that necessarily flow from a common idea. *See generally* 3 Nimmer § 13.03[B][3], at 13–76; § 13.03[B][4], at 13–82.

time clocks themselves are not substantially similar. To the ordinary observer, *see Concrete Machinery*, 843 F.2d at 608–09, CMM's clock is a small stand-alone clock which has two minute hands suggesting movement. Under the face of the clock, it has a slot in which there is a time card sticking out containing a dollar sign. In contrast, WPOR's clock is a larger clock's face with only one stationary minute hand. Also, instead of being a stand-alone image, WPOR's clock is a large background image over which the brochure's and advertisement's text is printed.

Furthermore, CMM has failed to show how it was prejudiced by the district court's failure to consider the KTK brochure when it ruled on the supporting materials. CMM states that, while the advertisements "closely track the KTK piece in layout and graphics, [ ... it] track[s] the text of KIX most closely," CMM's Reply Brief, pp. 6–7 n. 1, and the court did consider the latter. Moreover, the KTK brochure was actually given to the jury for consideration and, thus, the jury was able to take into consideration the layout and graphics of the KTK brochure when rendering its verdict. Finally, although CMM sought to have its claims with respect to the supporting materials get to the jury, we are hard pressed to think that—in light of its verdict of non-infringement of the brochures—the jury would have found any differently were it to consider the supporting materials.

### iv. Access

CMM also claims error alleging that WPOR's access to CMM's other copyrighted Payroll Payoff® promotions remained in question at the summary judgment phase. CMM points to WPOR's admission that it had access to both the KIX and KHEY brochures. First, WPOR's access to the KIX brochure was never in dispute, as WPOR admitted access. Second, we dispose of CMM's claim that access to other promotional brochures was a disputed material fact in the same way the district court did when it denied CMM's motion for reconsideration: CMM's record citations provide no support for any inference whatsoever that, at the summary judgment phase, WPOR had such

access. CMM provides three fruitless record citations in its discussion of access in its principal brief: The first we disregard as irrelevant as it supports the undisputed fact of access to the KIX brochure; the second is a citation to the Jury Trial Transcript as evidence of WPOR's admission that it had access to the WHEY brochure, which we dismiss as utterly irrelevant and inappropriate in an appeal from summary judgment; and the third is an inexplicable citation to "footnote 11, *supra*," which we ignore as a typographical error given that footnote 11 addresses CMM's trademark infringement claim and no other footnote is relevant. CMM's Brief, at 27. Nor do any of the additional record citations CMM provides in its reply brief persuade us differently. CMM's Reply Brief, at 6–7 n. 1.

██ Finally, even drawing all reasonable inferences in CMM's favor and assuming as true that, as CMM argues elsewhere in its brief, WPOR had access to CMM's promotions both by virtue of its prior use of CMM's services in 1991 and through McVay Media which received CMM promotional materials used by its customers, these inferences do not change the outcome of this appeal. Given our position that access to other brochures does not alter the outcome vis-a-vis the supporting materials, we consider—with some bewilderment—these inferences in connection with CMM's final argument that "the question of access to (and therefore copying of) these other protected brochures was another matter that should have been left to the jury." CMM's Brief, at 27. Even taking them as true, we reject CMM's claim of error thus: Given that the Jury Verdict Form shows that the question of copying of all four of CMM's brochures was in fact submitted to the jury, we fail to understand CMM's claim that "the question of access (and therefore copying of) [the] other protected brochures" should have been left for the jury. While the jury did not address the question of access, it did address the ultimate question of whether WPOR copied any copyrightable elements of four of CMM's brochures—including those about which it claims access was in dispute.

**1524**

### v. Verdict Inconsistency

CMM also argues that the district court's disparate treatment of the brochure and the supporting materials resulted in an inconsistent verdict. CMM may well have waived its right to raise this issue here, because it failed to raise this Fed.R.Civ.P. 49(b) argument in a timely manner before the district court. "Previously we have held that a defendant may not argue verdict inconsistency if he or she failed to object 'after the verdict was read and before the jury was discharged.'" *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*, 79 F.3d 182, 201 (1st Cir.1996) (quoting *McIsaac v. Didriksen Fishing Corp.*, 809 F.2d 129, 134 (1st Cir. 1987)), *cert. denied,* —— U.S. ——, 117 S.Ct. 294, —— L.Ed.2d —— (1996). We note that CMM did not even explicitly raise the inconsistency issue in its post-judgment motion as a matter of law. The possibility of waiver notwithstanding, we nonetheless address CMM's contention to the extent that it is inextricably intertwined with the issues raised by its appeal of the district court's ruling on the supporting materials.

CMM essentially argues that the jury's verdict that CMM had a valid copyright in its brochures is inconsistent with the court's ruling as a matter of law at the summary judgment stage that the supporting materials were not copyrightable. There is an inconsistency, CMM explains, because the brochure and the supporting materials contain the same language. In addition, CMM complains that "when the district court determined and the jury was informed by defendant's counsel that WPOR's supporting media had been deemed non-infringing as a matter of law, the jury had to find that the accused brochure was non-infringing as well, since the accused brochure and the supporting media contain the same text and similar graphics." CMM's Reply Brief at 4.

We disagree. As an initial matter, when we consider the jury's instructions, we find no inconsistency between the jury's verdict that CMM had a valid copyright in its brochures and the court's prior ruling regarding the supporting materials. Without objection by CMM, the jury was instructed thus on the issue of copyrightability:

To have a valid copyright in a brochure, CMM must persuade you by a preponderance of the evidence that it through an employee created an original work in composing the brochure. A work is original if it was independently created as opposed to copied from other works, and if it involves at least some modest creativity. Copyright can extend to text, layout, and/or design to the extent that they are original. CMM must have contributed some more than trivial element to the copyrighted work, but the result does not have to be new or novel. Indeed, a work may be original even though it closely resembles other works, so long as the similarity is fortuitous or coincidental, not the result of copying.

However, there is no copyrightable interest in the numerals, "1, 2, and 3;" the accumulating jackpot idea; the work or employment metaphor; short ordinary phrases like the radio contest rules or registering by filling out a form, or requiring someone to tune in and listen, or to participate by calling in on the telephone or by facsimile; familiar symbols or designs; or mere variation of typographic ornamentation, lettering or coloring.

Moreover, if you conclude that a direct mail brochure for an employment related accumulating jackpot radio contest can be composed and/or designed in only one or a very few ways, then the law does not recognize a valid copyright of the material because to do so would foreclose altogether the use of such brochures by others.

Trial Transcript, Vol. IV at 738–39. First, we note that these instructions are consistent with the law of the case regarding the supporting materials. *See CMM Cable Rep.*, 888 F.Supp. at 198. Second, the fact that the jurors found CMM to have a valid copyright in its brochures despite the court's ruling on the supporting materials suggests that—in following the instructions—they made a permissible and reasonable distinction between, on the one hand, the brochure's language or text and, on the other, its graphics or arrangement. While the law of the case held that the former did not constitute copyrightable elements, it did not preclude the jury

from finding that CMM met its burden of proving that the brochures' graphics or arrangement were independently created by CMM's Izor and, thus, were original and copyrightable.

In addition, we are unconvinced that the district court's grant of summary judgment on the supporting materials necessarily affected—let alone adversely to CMM—the jury's deliberations: One could just as reasonably think that if the district court's prior ruling had any effect at all, it would be more likely to have prejudiced the jury's determination of the existence of a valid copyright; but, instead, the fact that the supporting materials and the brochure contain the same language did not preclude the jury from finding that CMM had a valid copyright in its four brochures. In any event, CMM's contention ignores the fact that the district court's prior ruling said nothing about the brochures' layout and/or design, aspects which the jury also considered in determining both the existence of a valid copyright and infringement.

Finally, it is well established that even if both access and substantial similarity are demonstrated, "the trier of fact may nonetheless find no copying if the defendant shows independent creation." *Grubb*, 88 F.3d at 3. Here, viewing the evidence in the light most favorable to the jury's verdict, *United States v. Staula*, 80 F.3d 596, 599 (1st Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 156, —— L.Ed.2d —— (1996), the verdict that WPOR did not infringe CMM's copyrights could also be understood as a reasonable determination that, uncopyrightable elements aside, there was no substantial similarity between the two brochures; indeed, based upon our own comparison of the brochures (as set forth above),

we do not find them to be substantially similar. In the alternative, the jury could also have reasonably found that access and substantial similarity aside, WPOR's Payday Contest brochure was, in fact, an independent creation, crediting Spizuoco's corroborated testimony that he put away CMM's KIX brochure because he did not want to copy it as per the instructions he had received. Based upon our own review of the evidence, in the light most favorable to the jury verdict, *see id.*, we affirm the jury's verdict as we find no inconsistency.

## II. SUMMARY JUDGMENT— TRADEMARK

CMM also contends that the district court erred in granting WPOR's motion for summary judgment on its trademark infringement claim. Although CMM concedes that the district court applied the correct legal standard by addressing the eight "likelihood of confusion" factors set forth in *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 29 (1st Cir.1989), *see* 15 U.S.C. § 1114(1)(a), it raises a number of arguments challenging the district court's reasoning and conclusion. We only address one of its arguments, however, as we find that the others have been waived.

■■■ In CMM's twenty-page memorandum in opposition to WPOR's motion for summary judgment, a mere three sentences with three undiscussed citations were dedicated to trademark issues. The only argument advanced in its skeletal discussion was that likelihood of confusion is a factual issue for the jury, not a legal issue determinable by the court as a matter of law on summary judgment.[26] "The law in this circuit is crystalline: a litigant's failure to explicitly raise an issue before the district court forecloses that party from raising the issue for the first time on appeal." *Boston Beer Co. Ltd. Part-*

26. CMM's argument to the district court on trademark issues consisted of the following:
Similarly, likelihood of confusion—the standard for infringement of trademarks as well as trade dress—is a factual, not legal issue. McCarthy on Trademarks and Unfair Competition § 32.37[1], *citing, American International Group, Inc. v. London American International Corp.*, 664 F.2d 348, [sic] (2d Cir.1981). Summary judgment in a trademark case is the exception, not the rule. *Country Floors, Inc. v.*

*[Partnership Composed of] Gpener [Gepner and Ford]*, 930 F.2d 1056 (3d Cir.1991). Because the satisfaction of the *Boston Athletic* factors cannot be determined as a matter of law in this case, [WPOR's] motion for summary judgment with respect to trademark and trade dress infringement should be denied.
CMM's Memorandum of Law in Opposition to [WPOR's] Motion for Summary Judgment, pp. 3–4 (footnote containing citation to *Boston Athletic* omitted).

*nership v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 180 (1st Cir.1993).

In its reply brief, CMM insists that it preserved the additional trademark arguments it now advances. Pointing out that it challenges the district court's decision on the grounds that the district court "used faulty reasoning," it first argues that we cannot find waiver because it could not possibly waive a challenge to the court's reasoning as it did not know what that reasoning would be ex-ante. The second reason CMM advances in support of its contention that its arguments were properly preserved is that its verified complaint alleged a likelihood of confusion between Payroll Payoff® and WPOR's "Payday Contest" and that its twenty-page memorandum in support of its preliminary injunction motion contained an "exhaustive analysis" of the *Boston Athletic* factors.[27]

■ We have little trouble, however, in concluding that there is absolutely no merit to CMM's preservation arguments or, for that matter, to another argument it could have advanced: i.e., that we should find its arguments preserved because they were advanced in its motion for reconsideration. All of these arguments are insufficient to prevent a finding of waiver and fall on deaf ears. As we have explained before, not only can parties not claim error based on arguments which the district court never had a chance to timely consider, but courts are also entitled to expect represented parties to incorporate all relevant arguments in the papers that directly address a pending motion. *See generally McCoy v. Massachusetts Inst. of Techn.*, 950 F.2d 13, 22 & n. 7 (1st Cir.1991) (citing cases), *cert. denied*, 504 U.S. 910, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992).

Despite our well-established rules and "customary practice," *Boston Beer*, 9 F.3d at 181, CMM nonetheless insists in its reply brief that we should not find waiver, suggesting that, because it has not raised any new theory on appeal that was not presented in its memorandum of law in support of its preliminary injunction motion, it has not "ambushed" WPOR or the district court.

*See, e.g., McCoy*, 950 F.2d at 22. We are unpersuaded by this argument for two reasons. First, contrary to CMM's contention, we note that the "exhaustive analysis" submitted in connection with its preliminary injunction motion does not contain "much of that same analysis and case law [that] is re-used in [its] initial [appellate] brief." CMM's Reply Brief, p. 24. Second, CMM's contention misses the point that concerns about parties and courts being "ambushed" is not the only reason for the raise-or-waive rule: In opposing motions, parties "cannot expect a trial court to do [their] homework for [them]." *McCoy*, 950 F.2d at 22 (noting as much in Rule 12(b)(6) context). Thus, notwithstanding the possibility that this case does not implicate concerns about "ambush," CMM simply cannot expect to shirk its "affirmative responsibility to put [its] best foot forward in an effort to present some legal theory that will support [its] claim," *id.*, 950 F.2d at 23, that WPOR is not entitled to summary judgment on CMM's trademark claim. The district court was under no obligation to rummage through CMM's preliminary injunction filings made more than seven months earlier. *Cf. id.* at 22 n. 7. ("the district court was under no obligation to rummage through later-filed items pertaining to other matters in an attempt to vitalize [an] anemic argument" contained in an opposition to dismissal motion). While CMM arguably did advance the seeds of its legal theories underlying its appellate arguments, the dispositive fact remains that CMM failed to advance any of these appellate arguments to the district court in connection with the summary judgment motion: "Overburdened trial judges cannot be expected to be mind readers." *Id.* at 22. CMM cannot expect the district court to transform CMM's preliminary injunction arguments into a substantive opposition to WPOR's motion for summary judgment, speculating as to what CMM would argue and developing its arguments.

Because we see no reason to diverge from these rules, we treat all but one of CMM's trademark arguments as waived. We only

---

**27.** In pointing us to its "exhaustive analysis," CMM cites to pages 15–17 of its memorandum in support of its preliminary injunction motion. We assume it meant to cite to pages 7–14 of that memorandum, as the pages it cites do not address likelihood of confusion.

pause to add this: We are particularly reluctant to diverge from our customary practice given that CMM's trademark arguments challenging the grant of summary judgment came not only two weeks *after* the district court's summary judgment decision, but also because, in all probability, they were advanced in response to the district court's explicit observation that CMM failed to advance any trademark-related arguments in opposition to WPOR's motion for summary judgment. This is but another factor that convinces us that, even if CMM argued that its motion for reconsideration preserved its arguments, we would conclude that advancing arguments in its motion for reconsideration comes too late to resurrect its right to make these arguments on appeal.

We turn then to CMM's only preserved argument: that the *Boston Athletic* factors cannot be determined as a matter of law in this case by reason of the likelihood-of-confusion prong. As the district court noted in rejecting this argument, this court has upheld the grant of summary judgment on the issue of likelihood of confusion on more than one occasion. *See, e.g., Astra Pharmaceutical Prods., Inc. v. Beckman Instruments,* 718 F.2d 1201, 1204–09 (1st Cir. 1983); *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.,* 657 F.2d 482, 487–92 (1st Cir.1981). Although CMM argues on appeal that *Astra,* at least, is distinguishable, CMM failed to make this argument below; indeed, it utterly failed to explain (much less with any specificity) why this case is distinguishable or, for that matter, why it should not be decided on summary judgment. Because this argument was presented below in only the "merest of skelet[al]" forms, *see McCoy,* 950 F.2d at 22, we decline to consider its merits. *See United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

---

28. This was the extent of CMM's trade dress argument:

> Finally, the summary judgment motion should be denied concerning trade dress because the employment concept, graphics, layout and look of Payroll Payoff® associate the product with CMM, just like the restaurants in *Two Pesos.* At the very least, there is a jury question on this point. There is also no evidence that

## III. SUMMARY JUDGMENT—TRADE DRESS

CMM also contends that the district court erred in both its reasoning and conclusion when it granted WPOR's motion for summary judgment on its federal unfair competition/trade dress claim. In addition to making the argument that likelihood of confusion is not a question to be resolved on summary judgment, CMM's trade dress arguments in its memorandum of law in opposition to WPOR's motion for summary judgment consisted of a mere five sentences and one citation.[28] Thus, here too, CMM failed to preserve its arguments for appeal and thus, for the same reasons set forth above, we decline to consider the merits of CMM's trade dress arguments.

## IV. SUMMARY JUDGMENT—LOCAL RULE 19

CMM also argues on appeal that it was deprived of a meaningful opportunity to oppose WPOR's motion for summary judgment due to the district court's application of Local Rule 19. That rule provides that a party filing a summary judgment motion must also file a statement of the material facts upon which there is no genuine issue for trial. Local Rule 19(b)(1). A party opposing a summary judgment motion must file a statement of the material facts which are in dispute and, unless controverted by the opposing party's statement of material facts, the material facts properly included in the moving party's statement will be deemed to be admitted. Local Rule 19(b)(2); *see generally Carreiro v. Rhodes Gill and Co., Ltd.,* 68 F.3d 1443, 1446 n. 3 (1st Cir.1995) (citing *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 930–32 (1st Cir.1983) (sanctioning such local rules that

> CMM's trade dress hinders competition in any way; and, therefore is not functional. Indeed, [WPOR's] expert testified that there are many ways to run this contest.

CMM's memorandum of law in opposition, p. 4 (footnote containing citation to *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) omitted).

facilitate analysis of summary judgment motions)); *Coastal Savings Bank v. Arkwright-Boston Manufacturers Mutual Ins. Co.,* 686 F.Supp. 17, 19–20 (D.Me.1988) ("Counsel's compliance with the Local Rules is indispensable to the [c]ourt's effective management of its busy docket."). We review the district court's application of Local Rule 19 for abuse of discretion. *See Ramsdell v. Bowles,* 64 F.3d 5, 7 (1st Cir.1995) (acknowledging the district court's "great leeway in the application and enforcement of its local rules") (quoting *United States v. Roberts,* 978 F.2d 17, 20 (1st Cir.1992)), *cert. denied,* —— U.S. ——, 116 S.Ct. 913, 133 L.Ed.2d 844 (1996).

Before we address CMM's arguments, we review the pertinent facts. On March 13, 1995, WPOR filed its motion for summary judgment as well as its statement of undisputed material facts. On March 27, 1995, CMM filed its response and its statement of disputed material facts. On April 24, 1995, the district court informed the parties it could not determine from the summary judgment papers what the factual disputes were. Noting that the Local Rule 19 procedure "seems not to have worked here," the parties were directed to "meet and confer to try and generate a list of what matters are disputed so that we can determine indeed what is going to be involved in this trial." Transcript of 4/25/95 Conference in Chambers, pp. 3–4. The district court further noted that "in fairness ..., both sides are at fault here." *Id.* at 5. On April 27, 1995, counsel for both parties filed letters informing the district court of their respective versions regarding their attempts to reach agreement on the disputed and undisputed facts. WPOR enclosed a copy of its proposed joint statement, indicating that CMM did not believe the document reflected their discussions and had not agreed to sign it. In turn, CMM enclosed a list of the material facts which WPOR contends support its motion for summary judgment and a list of disputed facts. It also submitted a chart identifying whether issues are factual or legal. Both parties indicated a willingness to further discuss the matter. On May 1, 1995, WPOR filed a brief response, taking issue with certain aspects of CMM's letter.

In its summary judgment decision, the district court noted that "[t]he filings by the lawyers in this case have made the task of ruling on summary judgment much more difficult than it should be." *CMM Cable Rep.,* 888 F.Supp. at 194. Citing to *Stepanischen,* 722 F.2d at 930–32, and chastising both parties for their respective failures, the court ruled that "[t]he parties are bound by their Rule 19 Statements of Fact, however, and my summary judgment decision will be based solely upon facts properly presented therein." *CMM Cable Rep.,* 888 F.Supp. at 194. In its denial of CMM's motion for reconsideration, the district court reiterated that its summary judgment ruling was

> "based on the initial filings and not on the flurry of papers in which the lawyers attempted to justify their inability to agree and to make it seem like the other was at fault. I held the lawyers to the arguments they originally made and I decline at this point to reexamine the ruling based upon new arguments that may more recently have come to mind or new information not submitted earlier in accordance with Local Rule 19."

Order of [CMM's] Motion for Reconsideration, R. 95, p. 2.

■ On appeal, CMM contends that, although it filed a statement of disputed facts which it believed complied with Local Rule 19, it was "denied its 'day in court' " because the district court did not take into account "issues of material fact as well as important inferences arising from those facts that were properly before the court or otherwise in the record." CMM Brief, p. 48. Specifically, CMM claims error by the district court's reliance on *Stepanischen* when entering summary judgment, given CMM's effort to comply with the local rule and the court's request for an agreed-upon statement. CMM also contends that WPOR's "preemptive filing of supplement summary judgment papers" prompted the district court to apply Local Rule 19 in a manner wholly inconsistent with the policies of the Federal Rules of Civil Procedure, *see* Fed.R.Civ.P. 1 (providing that federal rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."), and

resulted in CMM being barred from fully complying with the court's request. Finally, CMM contends that the district court failed to examine the merits of WPOR's motion, which it was required to do irrespective of CMM's compliance with Local Rule 19, stating that "[h]ad it done so it would have seen that summary judgment in [WPOR's] favor was totally inappropriate." CMM Brief, p. 49.

After reviewing the relevant submissions and based on our independent review of the summary judgment record, we find no merit to CMM's arguments, failing to see how the district court abused its discretion in applying Local Rule 19. First, while we agree with CMM's general proposition that summary judgment is not appropriate where the parties in good faith disagree about material factual inferences that properly may be drawn from undisputed facts, see, e.g., Coyne v. Taber Partners I, 53 F.3d 454, 460–61 (1st Cir.1995), we disagree that this is such a case. Although CMM insists that the record was rich with disputes concerning the originality of CMM's promotion, the similarity between the two promotions, access to CMM's copyrighted brochures and the likelihood of confusion between the names and the source of WPOR's promotion, the Local Rule 19 filings reveal that, as the district court noted, many of the listed "disputed" items were not factual disputes but disputes over the legal conclusions to be drawn from the facts.[29]

Second, when the parties could not reach agreement as to what was factually in dispute and what was not, the district court simply, and quite appropriately, disregarded the subsequent "flurry of papers" and, in accordance with Local Rule 19, held the parties to their original arguments and facts properly presented with record citations. This is not a case where summary judgment was granted because the non-moving party failed to oppose the moving party's statement of non-disputed facts. See, e.g., Coastal Savings Bank, 686 F.Supp. at 19–20. Indeed, it is a case where the judge was already familiar with the factual record, having heard three days of testimony regarding CMM's motion for preliminary injunction.

Third, we find no merit to CMM's contention that "[r]ather than being given several chances to cure a deficient filing as was the case in Coastal Savings, CMM was barred from fully complying with the court's request for supplemental filings by WPOR's unilateral submission of 'its side' of the facts." CMM Brief, p. 48. As an initial matter, nothing in Coastal Savings suggests that the party there was given "several chances" to cure its failure to comply with Local Rule 19. See Coastal Savings Bank, 686 F.Supp. at 19–20 (noting only that the party opposing summary judgment had not filed a statement of material facts). Furthermore, the district court here did not request "supplemental filings," as CMM suggests; instead, it directed the parties "to meet and confer to try and generate a list of what matters are disputed.... I really need counsel to sit down in good faith and to say, what are the factual disputes." Transcript of 4/24/95 Conference, p. 4. Despite their efforts to generate a joint statement, the parties simply could not reach agreement. Based on our understanding of what transpired, WPOR's "unilateral submission" in no way prevented CMM from complying with Local Rule 19 or the court's directive. At most, WPOR's submission, informing the court that the parties had conferred but had not reached agreement, sparked the "flurry of papers" which generated a reprimand by the district court of both parties. See Order denying CMM's motion for reconsideration, p. 1.

Fourth, even assuming any abuse of discretion on the part of the district court, we fail to see how CMM was prejudiced, let

29. With respect to the areas CMM claims involved disputed facts, we note the following: (i) even taking as true CMM's "disputed" facts regarding originality, they did not affect the outcome of this appeal; (ii) the substantial similarity between the two promotions went to the jury; (iii) access essentially went to the jury as well as it considered the other brochures regarding which CMM claimed access; and (iv) CMM presented, as the district court noted, few facts and even fewer arguments to support a finding of likelihood of confusion in its trademark and trade dress infringement claims and, in any event, its arguments on appeal are deemed waived.

alone "denied its day in court," by the district court's decision. not to consider the parties' supplemental Local Rule 19 filings. Indeed, CMM has failed to demonstrate how it was prejudiced by the court's refusal to consider its supplemental statement of material facts or other record evidence. Although CMM claims that the "record was rich with disputes" concerning numerous issues, it failed to point out on appeal with any specificity what facts within its supplemental statement or elsewhere in the record should have been considered by the district court: "Had the judge ignored disputed material issues of fact as a result of [its application of Local Rule 19, CMM] could have called them to our attention in [its] brief on appeal; but [it] failed to do so." *Ramsdell,* 64 F.3d at 8. That CMM claims it went to "excruciating lengths" to limit itself to matters of record in the Local Rule 19 filings is irrelevant: CMM simply cannot demonstrate prejudice by Local Rule 19's application without specifying what material facts the district court should have considered. In this regard, we note that CMM's statement of facts in its brief contains a total of eight references to its supplemental statement, only one of which stands alone without companion cites.[30]

To be sure, as CMM correctly points out, this is not the end of the inquiry, given that "[i]t is well established that [Fed.R.Civ.P. 56] requires the [c]ourt to examine the merits of a motion for summary judgment even though a nonmoving party fails to object in a manner consistent with Local Rule 19." *Maillett v. Phinney,* 755 F.Supp. 463, 464 (D.Me.1991); *see Stepanischen,* 722 F.2d at 930. In other words, application of Local Rule 19 does not, and did not in this case, bar CMM from obtaining a favorable ruling based on the issues of law presented if it was entitled to one. While the summary judgment opinion does indeed state that the court's decision is "based solely upon facts properly presented [in the Local Rule 19 filings]," this does not

necessarily mean that summary judgment was inappropriate. Based upon our independent review of the Local Rule 19 filings as well the pleadings, affidavits, exhibits, depositions and transcripts from the preliminary injunction hearing, we simply cannot agree with CMM that the district court failed to consider the merits of WPOR's motion. In light of the district court's careful opinion, our own review of the record (however defined), and CMM's failure to demonstrate prejudice, we are simply unconvinced that the district court's application of Local Rule 19 in this case limited its inquiry into the factual record in a prejudicial manner, let alone denied CMM its day in court.

## V. JURY VERDICT & FINAL JUDGMENT

CMM also seeks reversal of the jury verdict and the district court's final judgment. Although it does not explicitly state why it seeks this relief, we interpret CMM to be essentially arguing on appeal what it argued in its post-judgment motion for a judgment as a matter of law under Fed.R.Civ.P. 50(a) and (b): that there was "no legally sufficient basis for a reasonable jury to find that there was no copying of the text, layout and/or design of CMM's brochures." We decline to consider this sufficiency of the evidence argument, finding that it has been waived.

CMM's implicit, if not explicit, contention on appeal that it deserved a verdict as a matter of law on the issue of copying is deemed waived by CMM's failure to move on this ground for a directed verdict under Fed. R.Civ.P. 50(a). While CMM did move for judgment under Rule 50(a) at both the close of its case and that of WPOR, which were renewed by its post-judgment motion as a matter of law, CMM did not base its motions on the argument that there was no triable

---

**30.** This one reference to the record supports the statement that "WPOR ultimately changed the name of the promotion from 'Payroll Payoff®' to 'Payday Contest.'" CMM Brief, p. 10. While the district court's summary judgment decision does not make reference to this fact, its consideration would not alter the outcome of the summary judgment decision. This statement adds little to the undisputed facts that WPOR had access to the KIX brochure and that Spizucco was instructed not to copy the brochure. Indeed, this citation more specifically implicates issues of willful infringement and copying, both of which were essentially considered and rejected by the jury verdict that WPOR did not copy any original elements of CMM's brochures.

issue of "copying" or "independent creation" by WPOR: The only ground specified by CMM in its motions was the originality of its brochures, with respect to which the jury found in CMM's favor when it returned a verdict that CMM owned a valid copyright in the four brochures considered by the jury. CMM's failure to properly preserve its sufficiency of the evidence challenge to the jury's verdict that WPOR did not copy any original elements of CMM's copyrighted brochures forecloses review in this court. *See Wells,* 850 F.2d at 810 ("[a]ppellate review may be obtained only on the specific ground stated in the motion for directed verdict"); *Pstragowski v. Metropolitan Life Ins. Co.,* 553 F.2d 1, 3 (1st Cir.1977) ("It is, of course, established that the sufficiency of the evidence is not reviewable on appeal unless a motion for a directed verdict was made in the trial court.... A corollary to this rule is that a party who moved for a directed verdict may obtain appellate review only on the specific ground stated in the motion.").

## VI. NEW TRIAL

■ CMM also seeks an order granting a new trial. To the extent that CMM seeks a retrial on the issue of WPOR's infringement of the brochures, CMM's failure to move for a new trial under Fed.R.Civ.P. 59(a)—on any ground—forecloses review in this court. "[A] motion for a new trial must be made in the first instance before the trial court, particularly where the weight of the evidence is at issue." *Wells Real Estate,* 850 F.2d at 811 (citing 6A Moore's Federal Practice § 59.15[3], at 326–27 (2d ed. 1987)).

## CONCLUSION

For the foregoing reasons, the district court's summary judgment and final order in favor of WPOR is *affirmed,* including its denial of CMM's motion for reconsideration and post-judgment motion for judgment as a matter of law, and WPOR's cross-appeal is *dismissed.* Costs on appeal shall be taxed against CMM.

The All New Mix Country 92.9

PAYCHECK PAYOFF

ROUND UP YOUR SHARE OF OVER $10,000 IN MIX CASH JUST FOR LISTENING!!!

Mix Country 92.9

4810 Deltona Drive
Punta Gorda, FL 33950

BULK RATE
U.S. POSTAGE
**PAID**
Creative Media
Management, Inc

Mix Country 92.9   **PAYCHECK PAYOFF**

Pay to the order of _____ *You!* _____   $ _____
Non-negotiable

*Your share of thousands of* _____ **DOLLARS**

Memo: *Paycheck Payoff®*   "*The Bear*"

⑆000067894⑆ ⑈2345678⑈

"The Bear"
Mornings 6 a.m. - 10 a.m.

AFFIX 29¢
POSTAGE
HERE

Mix Country 92.9

4810 DELTONA DR
PUNTA GORDA FL 33950-8754

**OFFICIAL**

**Kix Country 92.9**

**PAYCHECK PAYOFF**

**Time Card**

☑ **YES!** I'll be listening for my chance to make $50 an hour!

| HOME INFORMATION | NAME: |
|---|---|
| | HOME ADDRESS: |
| | CITY: _ _ _    _ _   STATE: _ _  |
| | HOME PHONE: _ _      _    BIRTHDATE: _ _ / _ _ / _ _  MO  DAY  YR |

| WORK INFORMATION | PLACE OF BUSINESS: |
|---|---|
| | WORK ADDRESS: _ _ _    _ _ _   |
| | CITY: _ _ _ _ _ _ _ . _ _   STATE: _ _   ZIP CODE _ _ _ _ _ |
| | DAYTIME WORK PHONE: _ _ _ _ _ _ _ _   FAX: _ _ |

P.S. Make copies for friends and co-workers. They can listen and win, too!
Save postage and enter faster ..FAX entries to 639-5065.

*today's HOT country!*

**WPOR**

**FM 101.9**
15 BAXTER BLVD.
PORTLAND, ME 04101 -1820

Bulk Rate
U S Postage
PAID
Portland, ME
Permit No. 457

PLACE 29¢
POSTAGE
HERE

*today's HOT country!*

**FM 101.9**
15 BAXTER BLVD
PORTLAND, ME 04101 -1820

C   O   N   T   E   S   T

Listen to... *today's* ... *country!*

# CALL IN...PUNCH IN AND YOU CAN EARN $25 AN HOUR!

**FM 101.9**

**HERE'S HOW**

## FILL OUT
your official WPOR Payday Contest entry form and mail it to WPOR or fax it to WPOR at 772-0870.

## TUNE IN
from 7 am to 6 pm weekdays for your name to be drawn. Once your name is announced, you have 10 minutes to call in and to begin earning $25 an hour.

## CALL IN, PUNCH IN & WIN!
When you hear your name announced on the air, call in and go "on the clock". You'll receive $25 per hour until you are replaced by the next contestant to call in. We'll announce a new name about 20-minutes past each hour, all day long. If you're on the clock at the end of the day, you'll be back the next weekday. Win the grand prize by watching NewsChannel 13 Sunday through Thursday nights at 6:59 pm. Watch for the *Phrase that Pays* and know it when you win the next day. You'll qualify for the Grand Prize drawing at the end of the contest.

Complete contest rules available at WPOR

*today's* ... *country!*

FM 101.9

---

WPOR FM 101.9

Fill out the entry form today and mail or fax to WPOR (772-0870) for your chance to earn $25 an hour!

Name _____ Birthday ___/___

Address _____

City _____ State _____ ZIP_____

Here's when I'm most likely to be listening to WPOR FM 101.9:

- [ ] 6-10 am (mornings)
- [ ] 10-3 (middays)
- [ ] 3-7pm (afternoons)
- [ ] 7pm-midnight (evenings)
- [ ] Midnight-6am (overnights)
- [ ] I am not a member of the WPOR Country Club. Please sign me up and send my card!

P S Feel free to make copies for your friends and neighbors so they have a chance to listen and win too!